```
          IN THE UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF ARKANSAS
                  FAYETTEVILLE DIVISION
```

**BILLY JOE WOLF**                                               **PLAINTIFF**

        **v.**            **Civil No. 04-5177**

**SHERIFF KEITH FERGUSON;**
**MAJOR GENE DRAKE; CAPTAIN**
**HUNTER PETRAY; LT. HENDRICKS;**
**NURSE SUE McDONALD; DR. NEIL**
**MULLINS; JOHN DOE MEMBERS**
**OF THE S.W.A.T. TEAM; AND**
**JOHN DOE MEMBERS OF THE S.E.R.T.**
**TEAM**                                                         **DEFENDANTS**

### O R D E R

    Now on this 30th day of January, 2006, come on for consideration the **Magistrate Judge's Report And Recommendations** ("R&R") (document #75); **Defendants' Objections To Magistrate Judge's Report And Recommendation Regarding Plaintiff's First Amendment Religion Claim** (document #71); and **Plaintiff's Objections To Magistrate Judge's Report And Recommendations** (document #78), and based on its consideration of said documents, the Court finds and orders as follows:

    1. In his complaint, plaintiff Billy Joe Wolf claims that defendants violated his constitutional rights (through the use of excessive force, the denial of adequate medical care, and the denial of religious freedom) while he was a pre-trial detainee at the Benton County Detention Center ("BCDC") in 2004. These claims were referred to United States Magistrate Judge Beverly Stites Jones for report and recommendation.

On September 8, 2005, following an evidentiary hearing, the Magistrate Judge's Report And Recommendation ("R&R") was filed.

Separate defendants, Sheriff Keith Ferguson and Captain Hunter Petray, filed timely objections to the R&R, as did plaintiff, Wolf. The Court now considers the R&R, together with the objections thereto.

2. The Court notes that plaintiff's three claims were treated as follows by the Magistrate Judge:

(a) <u>The Excessive Force Claim</u> -- Plaintiff's claims that he was subjected to the use of excessive force and denied adequate medical care arose out of an incident (the "Incident") which occurred at the BCDC on June 2, 2004.

The Magistrate Judge concluded plaintiff failed to establish that he had been subjected to excessive force by any of the defendants during the Incident, for the following reasons:

\*   None of plaintiff's grievances and requests for medical treatment following the Incident mentioned use of excessive force on the date of the Incident;

\*   While plaintiff rated his pain from the alleged use of force as 10 on a scale of 1 to 10 (with 10 being the most severe pain), he had no visible injuries and, except concerning the alleged injury to his shoulder, he complained of no injuries in his numerous medical requests following the Incident; and

\*   Plaintiff testified that he believed his shoulder was

injured when he was lifted off the floor while he was handcuffed -- an action that was taken by individuals who are not defendants in this case.

For the foregoing reasons, the Magistrate Judge concluded that plaintiff's claim that he was subjected to use of excessive force should be denied and so recommended in the R&R.

    (b)  <u>The Denial of Adequate Medical Care Claim</u> -- The Magistrate Judge also concluded that plaintiff failed to establish that he was denied adequate medical care after the Incident.

To establish such a claim, plaintiff would have to demonstrate that the defendants deliberately disregarded his serious medical needs. See, e.g., **Jolly v. Knudsen, 205 F.3d 1094 (8th Cir. 2000)**. The Magistrate Judge found the evidence showed:

\*    Plaintiff was taken to the hospital shortly after the Incident, where his shoulder was x-rayed;

\*    The x-ray -- as read by a licensed radiologist -- showed neither fracture, dislocation, nor other acute injury; and

\*    Plaintiff was treated with Ibuprofen for pain; received an injection of Decadron; and was given a prescription for Prednisone, which he declined to take because of its side effects.

In the face of this evidence of medical care for the condition of which he complained, the Magistrate Judge concluded that plaintiff's claim that he was denied medical care should be dismissed and so recommended in the R&R.

(c) <u>The Freedom of Religion Claim</u> -- Finally, the Magistrate Judge concluded that plaintiff's constitutional and statutory rights to freedom of religion were violated by the refusal of defendants Ferguson and Petray to allow him to have access to a prayer feather while in BCDC. This conclusion was based on the following findings:

* Plaintiff's religious beliefs were and are sincerely held;

* The use of a prayer feather was integral to plaintiff's exercise of those beliefs; and

* Defendants' total ban on prayer feathers did not pass the four-part test of reasonableness enunciated in **Turner v. Safley, 482 U.S. 78 (1987),** because defendants failed to examine alternatives to a complete ban on prayer feathers and there was an inadequate showing that prayer feathers would threaten institutional security or prisoner morale.

Based on these findings and her conclusion, the Magistrate Judge recommended the entry of judgment in favor of plaintiff on this claim, and an award of nominal compensatory damages, against Ferguson and Petray.

3. Plaintiff objects to the R&R on four grounds, and the Court will discuss each in turn.

(a) Plaintiff claims that the testimony of Ferguson that he (the plaintiff) might use a prayer feather for sexual gratification

shows "evil motive and intent to down grade not only Native American Indians but to make a mockery of Plaintiff's beliefs as a Cherokee Indian." As set forth in ¶4(c) of this Order, the Court has concluded that Ferguson and Petray are entitled to qualified immunity on plaintiff's First Amendment claim. Subjective intent is not relevant to the analysis of qualified immunity. See, e.g., **Miller v. Solem, 728 F.2d 1020 (8th Cir. 1984),** citing **Harlow v. Fitzgerald, 457 U.S. 800 (1982).** This objection will, therefore, be overruled.

(b) Plaintiff again voices his objection to being denied the services of appointed counsel.

The Court has previously addressed plaintiff's request for appointed counsel, and denied it. Plaintiff offers nothing in support of the objection that has not already been considered and rejected by the Court.

The Court believes plaintiff has sufficiently articulated and presented his contentions to frame the issues and arguments on which he relies. Moreover, the Magistrate Judge, this Court, and their respective legal staffs, have devoted considerable time and effort to researching the law applicable to plaintiff's claims. Accordingly, the Court is not persuaded that the outcome of this case would be any different -- or any more favorable to plaintiff -- had he been afforded the appointed counsel he requested. This objection will, therefore, be overruled.

(c) Plaintiff objects to the Magistrate Judge's conclusion that he was not subjected to excessive force, pointing to the videotape and blueprint of E-102 Pod which were received into evidence by the Magistrate Judge. He claims these items show "that 6-10 SWAT and S.E.R.T. members entered cell 219 where Inmate Wolf was assigned as his cell."

Obviously, both these items of evidence, in legal parlance, "speak for themselves" -- i.e., they show what they show, notwithstanding who might be viewing them. The Court has reviewed the videotape and the blueprint of E-102 Pod, and is not persuaded they show what plaintiff believes they show.

However, even if (as plaintiff contends) they amounted to evidence sufficient to establish that six or even ten SWAT or SERT members entered his cell, such evidence alone would not prove a case of excessive force. In the Court's view, no reasonable fact finder could properly conclude that plaintiff was subjected to excessive force merely because a large number of officers entered his cell during an incident such as the one here under consideration. Common sense counsels that, when trying to quell a jail disturbance and restore order, it is neither imprudent nor excessive for jail officials to provide a *show* of overwhelming force. Merely having a large number of police officers on the scene to provide that *show* of force, however, does not amount to the *use* of excessive force. There is no merit to this objection

and it will be overruled.

(d) Finally, plaintiff objects to the findings of the R&R on the issue of denial of adequate medical care. However, he offers no basis to support this objection.

The Court, nevertheless, has carefully reviewed the evidence and concludes that the Magistrate Judge's findings, conclusions and recommendations on this claim are sound. Accordingly, the Court sees no merit in this objection and it will be overruled.

4. Defendants Ferguson and Petray object to the Magistrate Judge's recommendation that judgment be entered against them on plaintiff's freedom of religion claim. In support of their objection, they contend:

\* that the Magistrate Judge applied the wrong standard in determining whether they violated plaintiff's First Amendment rights by denying him access to a prayer feather; and

\* that, even if they did violate plaintiff's rights by the denial, they are entitled to the defense of qualified immunity which would shield them from any liability on that score.

These two arguments are intertwined and, therefore, the Court will discuss them together. In order to determine whether a defendant is entitled to qualified immunity, the Court first must determine whether the facts alleged show that the defendant's conduct violated a constitutional or statutory right.

If the Court concludes there was such a violation, the inquiry

proceeds and the Court must then determine whether the right was "clearly established" at the time of the violation, i.e., whether the defendant would understand that what he was doing would violate the right. If the Court's inquiry shows that the violation occurred and that it was clearly established, the defense of qualified immunity is not available. **Abdouch v. Burger, 426 F.3d 982 (8th Cir. 2005).**

(a) Turning to the first step of the inquiry -- whether a constitutional or statutory right of plaintiff's was violated -- the Court notes that the Free Exercise clause of the First Amendment has long been interpreted, in the context of prisoner challenges, to allow for regulation of an incarcerated person's religious practices, so long as such regulation is reasonably related to legitimate penological interests. **O'Lone v. Estate of Shabazz, 482 U.S. 342 (1987).** Moreover, prison officials are not required to choose the least restrictive means of furthering those penological interests. **Salaam v. Lockhart, 905 F.2d 1168 (8th Cir. 1990).**

The Court further notes that statutory law imposes a higher burden on such regulations. In 2000, Congress enacted the **Religious Land Use And Institutionalized Persons Act ("RLUIPA"),** which provides, in relevant part, that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution" unless that burden

furthers "a compelling governmental interest" and does so by "the least restrictive means." **42 U.S.C. §2000cc-1.**

It can thus be seen that different standards govern the Court's analysis and consideration of plaintiff's constitutional claim and his statutory claim.

The Magistrate Judge concluded that the plaintiff's religious beliefs are sincerely held and the use of prayer feathers is integral to the observance of those beliefs.  She also concluded that the decision to deny plaintiff access to a prayer feather infringed on his religious freedom.  These conclusions are not challenged by Ferguson or Petray.

After so concluding, the Magistrate Judge then considered the four factors set out in **Turner v. Safley**, **482 U.S. 78 (1987),** which the Supreme Court directed trial courts to use in assessing whether there is a reasonable relationship between the infringement of a constitutional right and the goal cited to justify that infringement.  Here, the infringement was the decision to deny plaintiff access to a prayer feather, and the goal cited to justify it was institutional security.  Therefore, in the context of this case, the four **Turner** factors are:

(1)  whether there was a valid, rational connection between the decision to deny plaintiff a prayer feather and the goal of institutional security;

(2)  whether there were alternative means besides the use of

a prayer feather by which plaintiff could practice his religion;

(3)  what impact allowing plaintiff to have a prayer feather would have had on other prisoners in the BCDC; and

(4)  whether there were "ready alternatives" to absolute denial of a prayer feather, such as controlled access to the prayer feather.

The Magistrate Judge concluded, based on her **Turner** analysis, that the decision to deny access to a prayer feather was not reasonably related to the goal of prison security because the response was "exaggerated" in the face of an obvious, easy alternative, and because the decision effectively precluded plaintiff from practicing his religion.

While not disputing that **Turner** supplies the proper rule for decision, defendants contend the Magistrate Judge did not "accord appropriate deference to the decision of prison officials," and that the standard she applied amounts to imposing the "least restrictive alternative" test which has been rejected by the Supreme Court in situations like the one at bar.

The Court is not persuaded by defendants' argument.  In a First Amendment setting, **Turner** *requires* judicial evaluation of alternatives in order to determine whether the infringement in question bears a "reasonable relationship" to the goal or demonstrates its antithesis, an "exaggerated response."

> [T]he existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is

> an "exaggerated response" to prison concerns. <u>This is not a "least restrictive alternative" test</u>: prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint. But if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimus* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard.

**482 U.S. at 90-91** (internal citation omitted, underlined emphasis added).

The Magistrate Judge noted that inmates are allowed to keep pencils in their cells and reasonably concluded, absent any evidence to the contrary, that pencils would present as much of a security risk at the jail as would prayer feathers. She further concluded that there was a easy and obvious way of accommodating plaintiff's request for a prayer feather without breaching security, i.e., restricting access to the prayer feather to those times when plaintiff (who was housed in a cell by himself) was locked in his cell, and requiring that it be returned to jail officials before he was let out of his cell for exercise, showers, etc. Defendants offered no evidence to show that this alternative would not satisfy legitimate institutional security interests or that it would be otherwise impractical.

The Court finds that the Magistrate Judge conducted the appropriate analysis under **Turner** and, after conducting a similar analysis on its own, agrees with her conclusion that defendants' response to the security risk posed by the prayer feather was,

under the **Turner** criteria, an "exaggerated response" and therefore not reasonably related to the goal sought to be achieved. It follows that the Court agrees with the Magistrate Judge's conclusion that plaintiff's right to the free exercise of religion under the First Amendment was violated when he was denied reasonable access to a prayer feather.

(b) Plaintiff's statutory claim, as previously noted, is governed by the much stricter "least restrictive means" test. Accordingly, in light of the Court's conclusion that absolute denial of a prayer feather was an "exaggerated response" to concerns of institutional security in the constitutional analysis governed by the **Turner** criteria, it must follow that the denial also does not pass the "least restrictive means" test.

While prison security is a compelling state interest, and deference is due to institutional expertise in this area even under **RLUIPA**'s strict standards, **Cutter v. Wilkinson, 125 S.Ct. 2113 (2005),** the evidence shows that defendants did not select the least restrictive means to achieve their goal. The Court, therefore, agrees with the Magistrate Judge's conclusion that plaintiff's statutory right to freedom of religion was violated when he was denied reasonable access to a prayer feather.

(c) Defendants Ferguson and Petray contend that, even if they did violate plaintiff's religious freedom rights, those rights were not "clearly established" at the time, thus entitling them to

qualified immunity on plaintiff's claim involving those rights.

In evaluating whether qualified immunity is available for violation of a constitutional or statutory right, a central precept is that the right in question must be viewed in the specific factual context of a given case -- not in terms of "broad general propositions."

> The second step of the qualified immunity analysis requires courts to ask whether the right was clearly established. This is a fact-intensive inquiry and must be undertaken in light of the specific context of the case, not as a broad general proposition. For a right to be deemed clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. We have stated, [t]he second step of the qualified immunity inquiry will . . . shield the officers from suit . . . if their conduct was objectively legally reasonable in light of the information they possessed at the time of the alleged violation. In other words, if the officers' mistake as to what conduct the law required is reasonable, they are entitled to the immunity defense. Defendants will not be immune, however, if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that the defendant should have taken the disputed action.

**Littrell v. Franklin, 388 F.3d 578 (8th Cir. 2004)**(internal citations and quotation marks omitted).

As a general broad proposition, the Court believes a reasonable official in the position of Ferguson or Petray would have understood that plaintiff was entitled to observe his religious beliefs and conduct his religious practices while being held in the BCDC, so long as those beliefs and practices did not unreasonably threaten institutional security. However, as

-13-

indicated by the authority cited above, the Court must go beyond broad, general propositions and consider the narrow, fact-specific, proposition pertinent to the precise case now before it, i.e:

> Would an official in defendants' position, at the time in question, have understood that plaintiff was entitled to access to a prayer feather in order to worship -- either under the four-factor test of **Turner** or the "least restrictive alternative" test of **RLUIPA**?

In order for an official in defendants' position to determine whether plaintiff was so entitled, he would have had to determine -- at a minimum:

* whether plaintiff was sincere in his religious beliefs;
* whether the prayer feather was integral to his observance thereof; and
* what, specifically, is a prayer feather (apparently it is from one to one and a half feet in length).

In the Court's view, these inquiries are neither simple nor straightforward. There is no evidence that a reasonable officer in Benton County, Arkansas, would have any knowledge about plaintiff's particular religious beliefs or the ritual objects relating thereto. There is scant guidance in decided cases[1] even for courts

---

[1] The only cases found by the Court which touch, even tangentially, on institutional prohibition of prayer feathers are Farrow v. Stanley, 2005 WL 2671541 (D.N.H. 2005)(inmate plaintiff was allowed to wear prayer feathers at all times under his clothing; regulation preventing him from wearing such feathers outside his clothing not shown to infringe his religious freedom under RLUIPA); Robinson v. Horn, 2000 WL 1101351 (E.D.Pa. 2000)(unpublished)(prayer feathers were not an issue, but it is mentioned in the findings of fact that inmate plaintiff had prayer feathers available to him); Higgins v. Burroughs, 1988 WL 33884 (E.D.Pa. 1988)(unpublished), which mentions in passing that prayer feathers (like the rosary beads therein under challenge) would not be allowed in prison "visiting room"); and Cole v. Fulcomer, 588 F.Supp. 772 (D.C.Pa. 1984), reversed, 758 F.2d 124 (3d Cir. 1985), cert. denied, 474 U.S. 921 (1985)(in which plaintiff's prayer feather was confiscated upon his incarceration but the disputed issue was the cutting of his hair).

and judges concerning them.  Thus, although the Court has concluded that defendants erred, under applicable constitutional law precedent, when absolutely denying plaintiff the use of a prayer feather, it cannot say that "no reasonably competent officer would have concluded" that plaintiff should have been denied access to the prayer feather.  That being the case, the Court is obliged to conclude that defendants Ferguson and Petray are entitled to the defense of qualified immunity on plaintiff's freedom of religion claim -- whether couched as a constitutional or a statutory violation -- and that portion of the R&R concluding otherwise and finding them liable for infringement of plaintiff's religious freedom rights will not be adopted.

**IT IS THEREFORE ORDERED** that **Plaintiff's Objections To Magistrate Judge's Report And Recommendations** (document #78) be, and they hereby are, **overruled.**

**IT IS FURTHER ORDERED** that **Defendants' Objections To Magistrate Judge's Report And Recommendation Regarding Plaintiff's First Amendment Religion Claim** (document #71) are **sustained in part** and **overruled in part.**  Their objection to the conclusion that plaintiff should be awarded damages is **sustained** and their contention that they are entitled to qualified immunity is **sustained.**  Their other objections are **overruled.**

**IT IS FURTHER ORDERED** that the **Magistrate Judge's Report And**

**Recommendation** is **adopted in part and not adopted in part**.

* The Report And Recommendation is **adopted** insofar as it reports that plaintiff was not subjected to the use of excessive force or the denial of adequate medical care while he was a pre-trial detainee at the Benton County Detention Center ("BCDC"), and those claims are hereby **dismissed with prejudice**.

* The Report And Recommendation is **adopted** insofar as it finds that plaintiff's rights to religious freedom were violated when he was denied any access to a prayer feather while incarcerated in the BCDC; however, it is **not adopted** insofar as it finds defendants Keith Ferguson and Hunter Petray liable for damages in connection with the violation of plaintiff's rights to freedom of religion, and that claim is also **dismissed with prejudice**.

**IT IS SO ORDERED.**

                                          **/s/ Jimm Larry Hendren**
                                          **JIMM LARRY HENDREN**
                                          **UNITED STATES DISTRICT JUDGE**